UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SAHAR ABDULLAH SALEH,

          Petitioner,

v.

MICHAEL J. KLINGER, et al.,

          Defendants.
_____/

Case No. 1:19-cv-352

Honorable Hala Y. Jarbou

## OPINION

This an action appealing a decision by the United States Citizenship and Immigration Services (USCIS) to deny Petitioner Sahar Abdullah Saleh's application for naturalization. The USCIS denied Saleh's application because she failed to demonstrate "an understanding of the English language, including an ability read, write, and speak words in ordinary use in the English language[.]" 8 U.S.C. § 1423(a)(1).

Saleh contends that she qualifies for an exemption to this requirement because she "is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423 (b)(1). However, the USCIS determined that she did not qualify for that exemption and denied her application. Saleh now appeals that decision. Before the Court is Defendants' motion for summary judgment. (ECF No. 27.) For the reasons herein, the Court will grant the motion.

### I. Background

**A. Naturalization Requirements**

To qualify for naturalization, a person must, among other requirements, (1) be able to "read, write, and speak words in ordinary usage in the English language," and (2) demonstrate "a

knowledge and understanding of the fundamentals of the history, and of the principles and form of government, of the United States." 8 U.S.C. § 1423(a). There is an exemption to these requirements for a person "who is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423(b)(1).

Congress has given the USCIS authority to "establish the policies" and to "oversee the administration of such policies" for naturalization. 6 U.S.C. § 271(a)(3). The USCIS has done so through regulations and a policy manual. Regarding the English language and civic knowledge requirements for naturalization, the regulations provide for an examination before a USCIS officer. 8 C.F.R. § 335.2(c). The applicant's speaking skills are evaluated by the officer's assessment of the applicant's "answers to questions normally asked in the course of the examination." 8 U.S.C. § 312.1(c)(1). The applicant's reading and writing skills are evaluated through a test administered by the USCIS officer. *Id.* § 312.1(c)(2).

An applicant seeking a disability exemption to the English language requirement must submit "Form N-648, Medical Certification for Disability Exceptions, to be completed by a medical or osteopathic doctor licensed to practice medicine in the United States or a clinical psychologist licensed to practice psychology in the United States . . . ." 8 C.F.R. § 312.2(b)(2). A medical professional completing such a form must "attest to the origin, nature, and extent of the medical condition as it relates to the disability exceptions[.]" *Id.*

Generally, to qualify for the exemption, the applicant has the burden of demonstrating that "he or she has a disability or impairment that affects functioning such that, even with reasonable accommodations, he or she is unable to meet the English and civics requirements for naturalization." USCIS Policy Manual, Vol. 12, Pt. E, Ch. 3, https://www.uscis.gov/policy-manual/volume-12-part-e-chapter-3.

If the examining officer determines that the N-648 form is sufficient, then the USCIS waives the English language requirement.  Otherwise, the officer proceeds with the interview process.  USCIS Policy Manual, Vol. 12, Pt. E, Ch. 3.  An officer can find that the N-648 is insufficient if "[s]ignificant anomalies, discrepancies, or fraud indicators exist that preclude a finding of eligibility under a preponderance of the evidence standard." *Id.*

### B. Saleh's First Naturalization Application

The following facts are taken from the administrative record.[1]  Saleh is a 38-year-old native and citizen of Yemen.  She obtained permanent resident status through marriage to a U.S. citizen in 2007.  She filed her first naturalization application in February 2017, with the assistance of another individual.  (R. at 163.)  On that application, when asked whether she has "a physical or developmental disability or mental impairment that prevents you from demonstrating your knowledge and understanding of the English language and/or civics requirements of naturalization," she answered, "No."  (*Id.* at 147.)  She also certified under penalty of perjury that she "understood all the information contained in, and submitted with, my application[.]"  (*Id.* at 162.)

Saleh attended a naturalization interview on August 23, 2017.  She passed the U.S. history and government portion of the examination, verbally answering 6 out of 8 questions correctly in English.  (*Id.* at 171.)  She also passed the reading and writing portion of the examination.  When given the written question "Who lives in the White House?" she wrote, "the President lives in the White House."  (*Id.* at 173.)  However, she did not meet the English-speaking requirement because the USCIS officer found that she was unable to "understand and respond to the questions on [her]

---

[1] The parties have filed a copy of the record at ECF No. 26.  Each page of the record is paginated with Petitioner's name and a page number, e.g., "Saleh [page number]."  The Court will cite the record according to these page numbers.  For example, "R. at 3" will refer to the page identified as "Saleh 3."

3

application for naturalization even after the Officer repeated and rephrased the questions." (*Id.* at 34.) The officer gave her another opportunity to do so at a future date. (*Id.* at 170.)

Saleh attended her second naturalization interview on February 5, 2018. At that interview, she was "again unable to respond to the questions on [her] application even after the Officer repeated and rephrased" them. (*Id.* at 141.) Accordingly, the USCIS denied her application.

**C. Saleh's Second Naturalization Application**

Saleh filed a second naturalization application on February 28, 2018. Again, she did not request an exemption from the English-language requirement. (*Id.* at 421.) Instead, she affirmed that she could read and understand English. (*Id.* at 450.) She attended her naturalization review on August 22, 2018. She passed the civics portion of the exam once again, answering 6 out of 8 questions correctly. (*Id.* at 25.) She also passed the reading and writing portion, answering the question "Where does Congress meet?" with the written statement, "Congress mets [sic] in Washington." (*Id.* at 27-28.) But the USCIS did not grant her application because she was unable to answer questions about it in English. (*Id.* at 133.) It gave her the opportunity to try again at another interview.

Saleh attended her second naturalization interview for her second application on October 24, 2018. At this interview, she requested an exemption from the English and civics requirements, submitting Form N-648. (*Id.* at 34.) Dr. Firoza Van Horn, a clinical psychologist, had completed the form. After Saleh visited Dr. Van Horn with her husband accompanying her as an interpreter, Van Horn diagnosed Saleh as having "Intellectual Development Disorder." (*Id.* at 461.)

Dr. Van Horn reportedly assessed Saleh using a "diagnostic interview," a "mental status examination," the "General Ability Measure for Adults (GAMA)," and the "Wide Range Achievement Test (WRAT-4)." (*Id.* at 463.) According to Dr. Van Horn, Saleh "did not know her age but knew her birthdate," as well as her address and phone number. (*Id.*) Saleh was

4

"extremely slow and had difficulty processing simple information." (*Id.*)  Her IQ was "below 1% of people her age when her culture and language barrier were taken into consideration." (*Id.*)  "She did not know how many days are in a week or months in a year." (*Id.*)  "She was unable to understand and speak English but is able to read and write English at an elementary level." (*Id.*)

Dr. Van Horn's testing put Saleh at "3% percentile of other people her age," indicating "serious problems with scholastic learning and the incapacity to ever perform at her age level." (*Id.*)  Van Horn concluded that Saleh "remains stuck in elementary learning which is sufficient enough to meet the basic requirements in reading and writing of the Naturalization test," but that she was "incapable" of learning the "civics questions . . . as they are too complex for her." (*Id.*)  Van Horn did not believe that Saleh could answer the questions regarding U.S. history and civics, even when asked in her own language. (*Id.*)

At the naturalization interview, the USCIS officer determined that the N-648 form was insufficient to demonstrate eligibility for an exemption because neither Van Horn nor Saleh's regular treating physician treated Saleh for the condition identified in the form.  In addition, the officer noted a discrepancy between Van Horn's opinion and the fact that Saleh passed the civics portion of her examination at her initial interview. (*Id.* at 34.)  The officer continued the interview, but Saleh was again "unable to respond to the questions on [her] application even after the Officer repeated and rephrased" those questions. (*Id.*)  Consequently, the USCIS denied her application. (*Id.*)

Saleh asked for a rehearing.  In connection with that request, Dr. Van Horn submitted a new N-648 form to address the deficiencies identified by the USCIS in her previous form.  Van Horn reiterated that Saleh is "unable to speak and understand English." (*Id.* at 370.)  According to Van Horn, Saleh could not learn English because it would be "impossible" for her to "understand

and recognize that . . . speech is linked to meaning and be able to manipulate words with syntax and grammar." (*Id.*)  To explain Saleh's ability to pass the civics portion of the naturalization examination, Van Horn opined that Saleh was "lucky that . . . out of 100 questions, she knew 10 of them which means that she barely made it[.]" (*Id.*)

The USCIS affirmed the denial of Saleh's second application.  It noted a discrepancy between the N-648 form, which asserted that Saleh would be unable to pass the civics portion of the examination even in her own language, and Saleh's actual test results.  (*Id.* at 396.)  It also rejected Dr. Van Horn's factually inaccurate contention that Saleh knew the answers to 10 out of 100 questions on the civics exam.  In fact, Saleh answered 6 out of 8 questions correctly, on two separate occasions. (*Id.*)

Where the USCIS denies a disability exemption from the English and civics requirements for naturalization, the applicant can seek review of that decision in federal court, as Saleh did here.

## II. Standard

"Under 8 U.S.C. § 1421(c), federal district courts are given jurisdiction to review administrative denials of naturalization applications." *Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004).  "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

The parties have stipulated to litigate this case based solely on the administrative record, and they agree that the Court can resolve the matter by summary judgment. (Jt. Mot., ECF No. 18, PageID.150.)  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. Analysis

The Court agrees with Defendants that Saleh failed to meet her burden of proof to establish that she qualifies for an exemption to the English language requirement for naturalization. As indicated, the USCIS can reject an N-648 request for exemption if it finds significant "discrepancies" that would preclude a finding of eligibility for that exemption. There are several significant discrepancies in this case, all of which weigh against a finding that Saleh qualifies for the exemption.

First, Saleh repeatedly asserted in her own applications that she did not have a disability that would prevent her from understanding English. And apart from Dr. Van Horn's opinion, there is no evidence of such a disability in any of her medical records. None of the other records even hint at the existence of a cognitive disability.[2] If, as Van Horn contends, Saleh's condition is so severe that it "limits functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work and community" (R. at 461), then one might expect there to be some evidence of it in her medical records. There is none. One would also expect Saleh (or those assisting her) to raise her disability at the outset in her application. She did not do so in either of her applications.

Second, Dr. Van Horn's opinion is directly at odds with Saleh's performance. Van Horn opined that Saleh would be unable to pass the civics examination, but she passed that exam twice, correctly answering a total of 12 out of 16 questions in English. Dr. Van Horn's opinion fails to adequately account for these results. Indeed, Van Horn incorrectly assumed that Saleh had answered only 10 out of 100 questions correctly, but the interviewing officers asked her a total of

---

[2] To the contrary, Saleh's medical records indicate that her speech was "normal," and she frequently expressed consent to, or understanding of, medical services and treatment plans. (R. at 53, 94, 101, 120, 123, 125, 126.) Also, before Saleh entered this country in 2007, a civil surgeon in Yemen attested the Saleh did not have any "major impairment in learning, intelligence, self care, memory, or communication[.]" (*Id.* at 273.)

7

16 questions, not 100. And Saleh correctly answered 12, not 10. Furthermore, Saleh's consistent performance at two different times contradicts Van Horn's belief that the test results stemmed from "luck," as well as Van Horn's broader contention that it is "impossible" for Saleh to "understand and recognize that . . . speech is linked to meaning and be able to manipulate words with syntax and grammar." (R. at 370.) The latter suggests that Saleh would have difficulty with any speech at all, but clearly that is not the case. In short, the record refutes Van Horn's opinion. Accordingly, that opinion is not adequate to support Saleh's request for an exemption.

Saleh notes that the USCIS officer did not request a "supplemental disability determination" in accordance with the Policy Manual, which provides that

> USCIS may require the submission of an additional Form N-648, which may be from the same medical professional, or refer the applicant to another medical professional for a new Form N-648, if there are credible doubts as to the veracity of the medical certification.

USCIS Policy Manual, Vol. 12, Pt. E, Ch. 3(B)(3). The officer's failure to do so, however, does not improve Saleh's case. Moreover, Saleh had more than one opportunity to prove her entitlement to an exemption. She could not do so, even after Van Horn submitted a new Form N-648.

### IV. Conclusion

In short, no reasonable jury could find that Saleh met her burden of proof of demonstrating that she is entitled to a disability exemption from the requirements for naturalization. On *de novo* review, the Court agrees with the decision of the USCIS to deny Saleh's application. Accordingly, the Court will grant Defendants' motion for summary judgment.

An order and judgment will enter consistent with this Opinion.

Dated: February 2, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE